and it looks as if counsel are present and prepared to go. Mr. Myers for the appellate. Yes, your honor. May it please the court. Andrew Myers for the appellant. We are asking the court to overturn the district court's order based on the district court making clearly erroneous findings of fact and abusing its improperly applying section 3553A factors. Specifically, the court found that the appropriate level offense level was 24 based on a finding that there's a substantial risk of death or serious bodily harm pertaining to a harmless error argument that the state makes. Alternatively, the court found that the proper offense level would be 20 for endangering a dwelling. Its appellant's position that both of these determinations are improper and that his base offense level should be 10 and then minus 2 to a offense level of 8 after acceptance of responsibility. The appellant posits that the district court clearly erred in finding a substantial risk of death or serious bodily harm as to the fire that he started. The characterization of this fire when the was that this fire was low intensity. It was in the Buffalo River National Park adjacent to appellant's grandparents cabin. Counsel, doesn't that just mean they got there in time to stop it? What can you show that would indicate that but for the intervention of the firefighters that this fire wouldn't have consumed substantially more than the acreage it did and there was a dwelling not that distant from the fire that they actually contained? Correct, your honor. The government's witness though testified and agreed that this fire had been self burned out in many areas. It was cold or flame when the firefighters arrived and there was no reported wind. The fire was also described as smoldering and creeping and only approximately two feet tall. The flame was two feet tall and this fire was put out with shovels and leaf rakes indicating that this was more or less a the shovels to cover it, leaf rakes to create a barrier line. The dwelling at issue was across a county road which in and of itself I believe constitutes an artificial barrier similar to what the leaf rakes would have been doing anyway and so as it pertains to the endangering of the dwelling... But all of that speculates that the wind conditions and the access of the fire to some additional fuel wouldn't have enabled it to, you know, fire is not entirely predictable natural phenomena. Correct, your honor, but the testimony at the sentencing hearing was that there was no wind reported. With no wind and a small flame such as this that was put out with with leaf rakes, it's I believe clearly erroneous to assume that the fire is going to jump over a county road to go burn this dwelling. Is there a risk of serious bodily injury here that that is also in play? And the reason I ask that is you know it's dark, firefighters are out there under circumstances where it's not easily, people don't see things as well as they might have and you know just as an aside I would just tell you that as a guy who has lived my whole life in a place where prairie fires exist, that they seem to go from zero to a hundred at light speed every once in a while when the wind changes directions. You know I mean it's it's just kind of the way it is and so I mean there's an inherent risk in fire that's always there, fires are dangerous, but is there anything that we should be particularly concerned about the fact that these firefighters are out there in the dark under in a Well your honor, I don't believe so. The fire in and of itself, the testimony did not indicate that the fire itself created the substantial risk of harm. It appears that it was more the terrain at issue. However, that would mean that any fire in any national park would inherently carry with this the substantial risk of death. When the evidence that the government witnessed put on or the testimony was that the potential issues pertaining to the hole getting stuck on a fence or falling off bluffs that were defined as two foot tall, that's any park national park you would presumably go into and so next to just the the terrain at issue, which mind you this was not miles down a trail, this was your honor a few dozen yards off of a county road and so there's no testimony other than the natural terrain that there was an that would create a substantial risk of death. Was any argument ever advanced because I didn't see it in the record that as to the knowingly created prong of this analysis? Well your honor, we believe that there was not a substantial risk of death or serious bodily harm and if there's not a substantial risk then you cannot knowingly create that and so I think it's inherent in that. What are we to make of the defendant's own description that you gave the description of statements made by the firefighters but what do we are to make in the record of the defendant's own description of the fire as uncontrolled? Well I believe that that can be contextualized in terms of it began as more or less a brush pile. I believe that the testimony of that was about ten feet wide. It did expand beyond that but again by the time the firefighters arrived on scene it was described as self burned out so by the time anyone could have been put in harm's way this fire was more or less under control of its own volition or just the natural course of how the fire proceeded. In addition to there being no real testimony or evidence as to the substantial risk of harm other than the terrain which I don't believe is inherent in and of itself to to establish a substantial risk and the fact that this fire would have had to have grown and jumped the county road with no wind at play there's not an endangerment of the dwelling and so we believe it's our position that this enhanced level from 8 to or from 10 to 24 to 20 was improper. The second point on appeal is that the court found that the appellant started the fire with the intent to cover up the crime of harvesting timber however the facts that were brought out of the hearing were that the National Park Service does not go to this area very often in fact it was described as seldom going to this burn this dead tree after taking the firewood that could have created this fire or could have notified anyone when in reality what would have happened if he left it there was that the tree would have decayed and everyone would have been numbed the wiser and so as such there's no evidence that he concealed a crime. The third matter on appeal is that the court improperly a factor specifically as it pertains to our client's criminal history the court found that he was a criminal history level six based on a calculation of 15 points. Nine of those points were for conduct that occurred concurrent with or subsequent to the conduct alleged or that our client was sentenced pursuant to. We believe those nine points should not have been calculated and that he should have had a criminal the criminal history point should have been six per prior conduct which we believe that the phrase history in and of itself implies prior conduct not concurrent or subsequent conduct when you based on these calculations with a base level a base offense level of eight with a category three history at six criminal history points our client would have been facing six to twelve months rather than the more than the maximum of sixty months that he was sentenced to. Great thank you counsel. Mr. Stone. Yes thank you your honor and may it please the court my name is Lloyd Stone I represent the United States the Western District of Arkansas. Your honors I would ask the court to follow up on the court's questions I think they are they're correct in in this issue regarding this issue that the focus here based on the whether or not there was a fortuitous outcome to the fire rather whether there was a creation of risk the focus is on the risk and as this court just recognized in its questions to Mr. Wall's attorney in this case the the appellant Mr. Walls not only set one fire he set two fires and then walked away from those fires under conditions as the court alluded to that were described in the testimony by the fire chief that during the day when he set the fires not necessarily at night when the fires were contained during the day when he set those fires were windy were dry were warm and conditions that the fire chief noted were optimal for a fire to spread and so in this instance it's even though there was thankfully no one suffered serious bodily harm although there was a firefighter who was injured but the point is it's the creation of risk and by creating two fires by walking away from them on on that day on those conditions in that terrain in the middle of a national forest when the appellant himself lives out there and knows that there is not easy access from a fire department to deal with what he caused all those things go into the district courts clear findings by preponderance of the evidence that Mr. Walls on that day created substantial risk of serious physical body excuse me serious bodily injury or death to those who responded to the fire. Counsel how do you address the the case law that says that just firefighters doing what firefighters do to go to a fire doesn't necessarily trigger this aggravating factor that there needs to be some heightened condition that would would enable the enhancement. What's the aggravating condition that would make this something different than firefighters doing what they do? Yes your honor that is that is the law we cited that in our brief and the district court addressed that issue. The district court made clear I believe it's page 49 of the transcript that the district court recognized that it had to find things more more than just the mere showing up to a fire and in this case the fire chief Mr. Wimberly testified very clearly that they would not have engaged a wildfire at night in the national forest but for the fact that Mr. Walls's fire was getting close to the structure of the dwelling called the Indian house in the record and it had gotten to within 35 yards of that house so that the firefighters in fact had to engage the fire in the evening over that difficult terrain using only their headlamps and in fact the fire chief testified very clearly that they had to do containment lines and so on all the things that they do in order to engage the fire because the fire itself had spread to the point that it was endangering that structure as well as he alluded to the possibility that the fire would engage further structures in that area. So yes it's true that merely showing up to a fire is not sufficient but in this case the district court found and it started as findings were supported by the record that it went beyond simply showing up to actually having to engage it when they would not have otherwise engaged the fire. Your Honor, turning to the the second issue Mr. Walls raised which regards subsection B1 related to his motive in committing the offense. I believe the the crux of his argument is is that it's illogical it would have been illogical for for him to have burned the logging debris to conceal his illegal logging but I don't I don't want to say this I don't hope this doesn't come across as flippantly but there's no requirement that his thinking be clear in terms of why he's doing what he's doing and in fact there's there's evidence in this case that Mr. Walls was a methamphetamine user and in fact in his allocution he references that as part of his rationale or part of his mitigation but there's aside from his allocution there's evidence he was on probation for possession of methamphetamine in the course of conduct in the days and weeks after this he was arrested for possession of methamphetamine so and so there's no requirement that he be thinking clearly there's obviously sufficient evidence that he that was at least one of his motives the motive the indictment said he was burning logging debris and by pleading guilty to the indictment he necessarily admitted the truth of that statement there were two opinions one from the the fire investigator that saw that there were tree toppings from the large oak tree that were part of the brush pile that he was burning and so there's there's ample evidence that Mr. Walls was at least one at least his motive in starting those fires was to burn the was to conceal that he had been illegally harvesting a very large oak tree probably over the course of days and so the focus of that particular enhancement or that that enhancement is what was he doing at the time not necessarily the outcome and again Mr. Walls respectfully I would say conflates the outcome with what he was doing at the time he was trying to cover up to get rid of his logging debris it happened that because he left the area and created substantial risk of death and serious physical injury he also thereby eventually alerted others but that doesn't those two those two kinds of intent don't necessarily conflict lastly your honor with respect to judge Erickson's question earlier about the knowingly yes that's obviously an element our position is is that it's court looks at mr. Walls is pre sentencing pleadings for example his objection to the precincts investigation report his sentencing memorandum and his thereby he would have forfeited which means he would have had the opportunity of course and appeal to argue plain error but in his opening brief he does not even address the issue of knowingly and our position is as we alluded to in our brief that he is obviously waived or abandoned that issue and I believe even in his reply brief he doesn't address it so that's with respect to the knowing element. Your honor we did raise an argument of harmless error and we cited the McCarn's case out of the Ninth Circuit that seems to indicate that because the guideline range here was ultimately not impacted let me preface back up and preface this by saying if the court finds that the specific offense characteristic the two-level enhancement for setting the fire with the intent to another offense if the court finds that that's been sufficiently established in our position is it's harmless error based with respect to the base offense level based on the district courts statements and findings that the so called Indian house was in fact endangered and the court looks at the subsection lower the next subsection down from the substantial creation of structure a dwelling or a dwelling other than a structure was quote endangered. The natural language of endangered means to put at risk and there was clear evidence that the court alluded to it in its findings that this structure itself was put at risk. The fire came within 35 yards I realized that there was a quote county road but it's not in the sense that we might think of as a road per se the the fire chief testified that it was an overgrown road and he gave his opinion testimony which the court obviously credited that the fire could have easily quote spotted over that road by virtue of a of an amber burning and you also have evidence that the owners that house were taking steps to protect their property protect the structure by virtue of their own actions and you have the fact that the fire department itself stationed their fire truck which had water in front of the Indian house in order to protect it. So your honors I see that my time is running short so for all those those reasons we respectfully ask this court to affirm the judgment of the district court in all respects. Thank you Mr. Stone. Thank you. Mr. Myers your rebuttal and please reply to the harmless error suggestion raised by the fire department. Counselor you're muted. Your honor yes may it please the court in regards to the harmless error argument that is implying that there is this the dwelling that was in danger. We again believe that the facts brought out of the sentencing hearing show that the drawing was not in danger the the wind there was no wind when the firefighters arrived there was a barrier the artificial barrier that was a county road that was akin to the types of barriers that they would have that the firefighters would have been building with these wheat bricks and because there's this barrier because there's no wind and because the fire was all of itself burned out minus a lit flame whenever the firefighters arrived there's no evidence that that fire actually presented any danger to the there's always a you know a minimal risk that harm may occur but as was brought out that the fire card indicated that there was minimal risk to that guy. That minimal risk to the extent that the judge talked about that in the transcript the sentencing transcript your argument is that it's clearly erroneous what he was saying that the dwelling was at risk. Well when he found that the dwelling could have been at risk I do believe that that was clearly erroneous based on the facts that were brought out at the sentencing hearing. Did you say there was no wind at the time? Correct on the the fire card sheet indicated there's no rip no wind now we can't know what the wind was before the firefighters arrived but when the firefighters arrived there's a marking of no wind. I remember as a kid on the farm back in the 40s before we'd spray we used to burn the stubble and we quickly learned that once the fire starts it creates its own wind. And this was a county road or a township road overgrown County Road? Yep your honor it was a it was a county road the testimony by the government's witness was that it had been overgrown. Well I've got some land well anyway that's neither here nor there I can visualize an overgrown road. Mr. Myers I think I pretty much exhausted your time with my inquiry on harmless error was there something else that you had listened to from the government that you felt was crucial for us to be advised of for rebuttal? Just very quickly your honor in terms of the aggravating condition it appears that the aggravating condition next to the terrain is simply that they went to the terrain at night. We don't believe that the timing in terms of nighttime versus daytime is inherent in creating a substantial risk again this is knowing and and so as such simply showing up at a fire in a national park at night is not in and of itself knowledge that you substantially you created a substantial risk of death or bodily harm to anyone who responded. Thank you your honor. Thank you Mr. Myers. Thank you also Mr. Stone court appreciates both council's presentations to us this morning and responding to our questions we'll continue to review the materials that you've submitted and render decision in due course.